UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BIN WANG and YAN QIU ZHANG,

                              Plaintiffs,

            -against-

LEO CHULIYA, LTD, et al.,

                              Defendants.

Case No. 20-cv-10395 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

        Bin Wang ("Wang") and Yan Qiu Zhang ("Zhang" and, together, "Plaintiffs") bring this

lawsuit against Leo Chuliya, Ltd, d/b/a Fantasy Cuisine Co. ("Fantasy Cuisine"), Dumpling Plus

Corp., d/b/a Dumpling + Noodle ("Dumpling Plus"), Austin Chu ("Chu"), and Jane Chen

("Chen" and, collectively, "Defendants"), alleging violations of the Fair Labor Standards Act

(the "FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law (the "NYLL").  *See generally*

ECF No. 18 (the "Amended Complaint" or "Am. Compl.").  Defendants move for summary

judgment.  *See* ECF No. 81 ("Br.").  For the reasons stated below, the motion is GRANTED in

part and DENIED in part.

## BACKGROUND[1]

### I.    Factual Background

        Unless otherwise noted, the following facts are undisputed.  Fantasy Cuisine is a

restaurant located in Hartsdale, New York.  RSOF ¶¶ 1-2.  Dumpling Plus is a food

---

[1] In support of their motion for summary judgment, Defendants submitted: a declaration of Lee
Nuwesra (ECF No. 83), with attached exhibits (ECF Nos. 83-1 through 83-8); a Rule 56.1
statement of undisputed facts (ECF No. 82 or "Def. 56.1 Statement"); and a memorandum of law
(Br.).  In opposition, Plaintiffs submitted: a declaration of John Troy (ECF No. 84), with attached
exhibits (ECF Nos. 84-1 through 84-15); a response to Defendants' Rule 56.1 statement (ECF
No. 86 ("RSOF")) with attached affidavits from Wang (ECF No. 86-1) and Zhang (ECF No. 86-

establishment in Bronxdale, New York, that offers dumplings and noodle dishes primarily for takeout. *Id.* ¶¶ 4-5. Chia-Hung Chu, also known as Austin Chu, owns both entities and oversees the managers working at each establishment. *Id.* ¶ 8.

Jane Chen a/k/a Yvonne Chen, Chu's wife, is a shareholder of those entities. *Id.* ¶ 9; *see* ECF 84-13 ("Chen Dep.") at 7:5-11, 8:14-21. She does not earn a salary from either entity in her capacity as a shareholder. Chen Dep. at 18:16-23. The parties dispute the extent to which Chen participates in the supervision and operation of Fantasy Cuisine or Dumpling Plus. ECF No. 84-14 ("Chu Dep.") at 103:9-19. She is not involved with the daily operations of either Fantasy Cuisine or Dumpling Plus; instead, her day-to-day routine consists primarily of taking care of two young children. Chen Dep. at 10:2-15, 17:7-9. While she occasionally visits the establishments, she does not manage them or discuss their business operations with Chu. *Id.* at 10:18-11:24, 15:21-22. Plaintiffs contend, however, that Chen managed Fantasy Cuisine and Dumpling Plus in Chu's absence when he went to Taiwan for a couple of months. *See* RSOF ¶¶ 9-10; ECF No. 86-1 ("Wang Aff.") ¶ 12; Chu Dep. at 31:8-14.

Fantasy Cuisine, where Plaintiffs worked, operates two departments: a dim sum department and a stir fry department. *See* Chu Dep. at 11:10-21. The departments function with separate kitchens and managers. *Id.* at 12:7-10. A head chef, known by the Chinese term "Lao Dai," oversees both kitchens. ECF No. 84-12 ("Zhang Dep.") at 44:21-25. Meanwhile, Dumpling Plus has its own managers, kitchen, and equipment. *See* ECF No. 83-5 ("Chu Decl.") ¶¶ 8-9; Chu Dep. at 11:2-7. From October 2015 to March 2020, Zhang worked at Fantasy

---

2); and an opposition memorandum of law (ECF No. 85 or "Opp."). Defendants then submitted a reply memorandum of law (ECF No. 92 or "Reply") and a supplemental declaration from Mr. Nuwesra (ECF No. 93), with attached exhibits (ECF Nos. 93-1 through 93-5).

Cuisine in its dim sum department.  RSOF ¶¶ 11, 13.  Wang worked there as a dim sum chef

from September 2019 to October 2020.  *Id.* ¶ 20.

The parties dispute the details of Zhang's role.  According to Defendants, Zhang

managed the dim sum department, where she supervised three other employees, including Wang,

who she hired.  Chu Dep. at 13:25-14:18, 16:6-24, 32:23-33:2; Chen Dep. at 13:5-19.  Zhang

denies that she worked as a manager or that she supervised others in the department.  *See* ECF

No. 86-2 ("Zhang Aff.") ¶¶ 9-10, 13, 17, 20.  Rather, she claims that she only worked alongside

these employees to prepare food.  *See* Zhang Dep. at 35:6-8, 40:9-41:12.  Zhang claims she told

Wang about an open position at Fantasy Cuisine and referred him to Chu but did not hire him

herself.  *Id.* at 49:14-18; *see* ECF No. 84-11 ("Wang Dep.") at 21:8-10, 26:16-18.  The parties do

not dispute, however, that Zhang at times criticized Wang's work making dim sum and corrected

his mistakes.  Wang Dep. at 34:23-35:7.  Wang followed her instructions when issued.  *Id.* at

35:8-10.

The parties also dispute the extent to which Plaintiffs' work was limited to the restaurant

at Fantasy Cuisine.  Defendants argue that neither plaintiff ever worked at Dumpling Plus and

that they worked only at and for Fantasy Cuisine.  Chu Dep. at 61:2-20; RSOF ¶ 7.  Plaintiffs

contend that they regularly prepared food that was sent over to Dumpling Plus.  RSOF ¶ 7; *see*

Zhang Dep. at 24:10-23, 30:16-18.  A year after she was hired, Zhang's weekly salary increased

from $800 to approximately $940, which Zhang attributes to the work she was doing for both

Fantasy Cuisine and Dumpling Plus.  RSOF ¶ 17; *see* Zhang Dep. at 24:7-13.

## II.  Procedural History

Plaintiffs brought this action on December 10, 2020, seeking compensation for their

unpaid overtime work and other violations of the FLSA and the NYLL.  *See generally* ECF No.

1 ("Compl.").  They amended their complaint on February 12, 2021.  Am. Compl.  Defendants

filed their amended answer to the Amended Complaint on April 26, 2021, seeking damages from Zhang as Wang's co-employer. *See generally* ECF No. 44. The case was reassigned to the undersigned on September 26, 2022. *See* ECF No. 54.

On April 3, 2023, Defendants moved for summary judgment. *See* Br. Plaintiffs opposed the motion on April 24, 2023. *See* Opp. Defendants filed their reply on May 16, 2023. *See* Reply. The motion is fully briefed and presently before the Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, a moving party is entitled to summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). A "genuine" dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Id.*

At summary judgment, the court's task is simply to "discern[] whether there are any genuine issues of material fact to be tried, not to decid[e] them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Therefore, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). The court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). Rule 56, however, "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). It is

instead the parties' responsibility to "point out" contested facts for the Court, and "to clarify the elements of the substantive law which remain at issue because they turn on contested facts." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).

## DISCUSSION

Defendants move for summary judgment on two main points.  First, they argue that neither Dumpling Plus nor Jane Chen can be held liable as Plaintiffs' employers.  Br. at 8-11.  Second, they argue that Zhang and Wang are exempt employees not subject to FLSA's and NYLL's overtime provisions.  *Id.* at 11-14.  Plaintiffs oppose both arguments.  *See* Opp.  The Court will address each argument in turn.

### I.   Defendants' Evidentiary Objections

As a threshold matter, the Court addresses evidentiary objections that Defendants raise to two declarations submitted by Plaintiffs in opposition to the summary-judgment motion.  Reply at 3-4; *see* Zhang Aff.; Wang Aff.  Defendants argue that some statements in these declarations contradict their prior deposition testimony and thus must be disregarded under as "sham" affidavits.  *See* Reply at 3-4.

Under the sham-affidavit doctrine, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).  "[C]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit."  *Golden v. Merrill Lynch & Co.*, No. 06-cv-02970 (RWS), 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007).  "However, this rule does not apply in two situations: (1) where the subsequent sworn statement either does

not actually contradict the affiant's prior testimony or addresses an issue that was not, or was not thoroughly, explored in the deposition; and (2) where the deposition testimony at issue is contradicted by evidence other than the deponent's subsequent affidavit." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 94-95 (S.D.N.Y. 2020) (quotation marks and citation omitted). "If a declarant's prior testimony and summary judgment declaration are not in direct contradiction, mere tensions or inconsistencies go to credibility, not admissibility, and credibility determinations are not proper at summary judgment." *Id.* at 95.

Defendants ask the Court to disregard the entirety of Zhang's and Wang's declarations because discrete statements in them contradict their deposition testimony. *See* Reply at 3-4. But the Court finds no instances of direct contradiction between the statements made in Plaintiffs' affidavits and those made in their depositions. Most, if not all, of Plaintiffs' purportedly contradictory statements either do not actually contradict their deposition testimony or address an issue not fleshed out in their depositions. *See Murex*, 500 F. Supp. 3d at 94-95. Nevertheless, the Court acknowledges Defendants' concerns and, as discussed below, recognizes other contradictions and inconsistencies not mentioned in Defendants' reply. Therefore, the Court will consider Zhang's and Wang's declarations, but only to the extent that each "augments, without contradicting, [their] deposition testimony, addresses issues not explored thoroughly in [those] deposition[s], or finds support in other evidence in the record." *Torrico*, 319 F. Supp. 2d at 394 n.2; *see Murex*, 500 F. Supp. 3d at 95-96 (declining to disregard the entirety of five declarations even where certain statements "squarely contradict" prior deposition testimony).

## II.    Employer Liability

"Only an 'employer' can be liable for violations of the labor rights conferred by the FLSA and the NYLL." *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372 (S.D.N.Y. 2022); *see Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Under the FLSA,

an "employer" is a "person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Similarly, the NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service," or "any individual . . . acting as employer."  N.Y. Lab. Law. §§ 190(3), 651(6); *see Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013).  "Because the two statutory definitions are nearly identical, courts in this Circuit have interpreted 'employer' under the NYLL in the same way they interpret 'employer' in the FLSA."  *Sanchez*, 638 F. Supp. 3d at 372 (quotation marks and citations omitted); *see Perez v. Rossy's Bakery & Coffee Shop, Inc.*, No. 19-cv-08683 (SLC), 2021 WL 1199414, at *7 (S.D.N.Y. Mar. 30, 2021) ("[T]here appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." (quotation marks and citation omitted)).

Employment under FLSA and, by extension, the NYLL is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).  "Whether a particular defendant is an employer is not a function of formal corporate relationships; instead, the inquiry is "grounded in 'economic reality.'"  *Sanchez*, 638 F. Supp. at 373 (quoting *Barfield*, 537 F.3d at 141).  "[T]he remedial nature of the [FLSA] statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *Herman*, 172 F.3d at 139 (quoting *Carter v. Duchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

"When it comes to 'employer' status under the FLSA, control is key." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting *Lopez v. Acme Am. Env't Co.*, No. 12-cv-00511(WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012)); *see Herman*, 172 F.3d at 135 ("[C]ontrol of employees is central to deciding whether appellant should be

deemed an employer.").  The Second Circuit has articulated two tests to determine whether an employment relationship existed for FLSA purposes: one relating to formal control and the second to functional control.  *Martin*, 273 F. Supp. 3d at 422; *see Barfield*, 537 F.3d at 142-143 (citing *Carter*, 735 F.2d 8; and *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)).

The formal-control test asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter*, 735 F.2d at 12 (citation omitted).  These factors are nonexclusive and are applied flexibly "to give proper effect to the broad language of the FLSA."  *Barfield*, 537 F.3d at 143.

The functional-control test considers whether a person or entity, even if lacking formal control, functionally controls an employee.  In *Zheng*, 355 F.3d 61, which involved an employer and its subcontractors, the Second Circuit identified the following non-exclusive factors:

> (1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers].

*Id.* at 72; *accord Barfield*, 537 F.3d at 143.

8

### A.  Jane Chen

On the undisputed facts, Jane Chen did not have sufficient control over Plaintiffs, formally or otherwise, to qualify as their joint employer.[2]  *See Carter*, 735 F.2d at 12 ("The power to control a worker clearly is a crucial factor in determining whether an employment relationship exists").

First, Plaintiffs offer little, if any, factual support for the notion that Chen had the power to hire and fire them.  The only evidence on this point comes from Bin Wang, who claims in an affidavit that Chen paid him his wages and was the one to fire him and pay his final wages.  Wang Aff. ¶ 14-15.  Yet in their amended complaint, Plaintiffs alleged that Chu, not Chen, was the one who dismissed Wang.  *See* Am. Compl. ¶ 43.  Plaintiffs also appear to concede that Chu "was the one who . . . sets the pay."  Opp. at 5; *see* Wang Dep. at 37:8-13, 40:11-21 (suggesting that Chu, not Chen, was the one who paid Wang).  Taken together, this factor weighs against a finding of formal control.

Second, in support of the notion that Chen supervised and controlled employee work schedules or conditions of employment, Plaintiffs argue that Chen "was in charge of the restaurant daily" whenever Chu was not present.  Opp. at 6.  This assertion, however, overstates the evidence in the record.  The only suggestion that Chen exercised any control at all over employees comes from Wang's statement in his affidavit that both Chu and Chen supervised and controlled his work schedule, Wang Aff. ¶ 9; that both Chu and Chen did daily accounting at Fantasy Cuisine, *id.* ¶ 11; that Chen "substituted for . . . Chu as the manager" when Chu went

---

[2] Defendants refer to the "economic reality" theory of joint employment but do not otherwise address whether Jane Chen qualifies as a joint employer under the functional-control test.  *See* Br. at 10-11.  Nor do Plaintiffs.  *See* Opp. at 5-6.  Therefore, the Court declines to consider whether Chen functionally controlled Plaintiffs.

back to Taiwan, *id.* ¶ 12; and that Chen bought and delivered the restaurants' inventories in Chu's absence, *id.* ¶ 13.

These statements are inconsistent with, and at times contradictory to, Plaintiffs' other statements in the record. For example, neither plaintiff mentioned Chen during their depositions when referring to their "boss." *See* Zhang Dep. at 50:9-14 (stating that only Chu was her boss, and "no one else"); Wang Dep. at 19:19-24, 27:6-8. To the extent that someone supervised Wang in his day-to-day work at Fantasy Cuisine, it was Zhang. Wang Dep. at 34:7-35:10. Likewise, Zhang stated that only Chu supervised and controlled her work schedule. Zhang Aff. ¶ 8. She also said that "Lao Dai," Fantasy Cuisine's head chef, was the one who delivered supplies needed to make dim sum whenever more materials were needed; she does not state that Chen ever participated in this task. *See* Zhang Dep. at 43:12-16, 45:7-46:14.

The uncontradicted statements in Wang's affidavit do not suggest that Chen supervised Plaintiffs' work schedules or their conditions of employment. Wang does not clarify what Chen's substitution for Chu as manager entailed, *see* Wang Aff. ¶ 12, and Chu stated that his employees continued to run Fantasy Cuisine and Dumpling Plus during his trip to Taiwan, Chu Dep. at 31:8-35:10. Chu also communicated with his employees through WeChat while he was away. *Id.* at 34:18-23. Finally, Wang's statement that Chen was known to him as the "Lady Boss," Wang Aff. ¶ 10, is not a factual allegation that supports the notion that Chen actually "possessed the power to control the workers in question," *Herman*, 172 F.3d at 139; *see Yongfu Yang v. An Ju Home, Inc.*, No. 19-cv-05616 (JPO), 2020 WL 3510683, at *4 (S.D.N.Y. June 29, 2020) (explaining that the plaintiff's allegation that alleged employer "was known to" the plaintiff as "'Big Boss' is not a factual allegation that supports the notion that he . . . actually 'possessed the power to control the workers in question.'" (citation omitted)). It merely suggests

that Wang might have perceived Chen to hold such power.  Accordingly, this allegation does not support this factor of the *Carter* test, which ultimately weighs against a finding of formal control.

Finally, Plaintiff offers no factual support to suggest that Chen "determined the rate and method of" paying Plaintiffs or that she "maintained employment records."  *Carter*, 735 F.2d at 12 (citation omitted).  These factors also weigh against a finding of formal control.  Because Plaintiffs have not offered facts sufficient to suggest that Chen had any formal control over them under any *Carter* factor, despite being a shareholder of the restaurant at which they worked, no jury would reasonably conclude that Chen was Plaintiffs' joint employer.  *See, e.g.*, *Yongfu Yang*, 2020 WL 3510683, at *4 (finding at the motion-to-dismiss stage that allegations satisfying one of the *Carter* factors was "insufficient to support a finding of formal control under the FLSA"); *Irizarry*, 722 F.3d at 111 ("Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees.").

Therefore, as a matter of law, Jane Chen cannot be held liable as Plaintiffs' joint employer.  The Court grants summary judgment as to Jane Chen and dismisses her from this action.

### B.  Dumpling Plus

Defendants similarly argue that Dumpling Plus neither formally nor functionally controlled Plaintiffs.  Br. at 9-10.  In opposition, Plaintiffs argue not only that Dumpling Plus was their joint employer but also that it was so integrated with Fantasy Cuisine as to be considered the same employer.  Opp. at 2-5.  Under either theory of employment, however, at least one dispute of material fact precludes summary judgment as to whether Dumpling Plus was an employer of Plaintiffs under the FLSA or the NYLL.

When closely affiliated but nominally separate entities are part of a single integrated

enterprise, they may be considered one employer for FLSA purposes.[3]  *Juarez* v. *449 Rest., Inc.*,

29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).  As the Second Circuit explains,

> In such circumstances, of which examples may be parent and
> wholly-owned subsidiary corporations, or separate
> corporations under common ownership and management, the
> nominally distinct entities can be deemed to constitute a single
> enterprise. . . . [A]n employee, who is technically employed on the
> books of one entity, which is deemed to be part of a larger "single-
> employer" entity, may impose liability for certain violations of
> employment law not only on the nominal employer but also on
> another entity comprising part of the single integrated employer.

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (discussing the

doctrine in the Title VII context); *see id.* (noting in contrast that joint employers "are separate

legal entities" that "handle certain aspects of their employer-employee relationship jointly"

(quotation marks and citation omitted)).  To determine whether related entities operate as a

single integrated employer, courts consider the "(1) interrelation of operations; (2) centralized

control of labor relations; (3) common management; and (4) common ownership or financial

control."  *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016).  No factor is determinative, but

"control of labor relations is the central concern."  *Id.* (quoting *Murray* v. *Miner*, 74 F.3d 402,

404 (2d Cir. 1996)).

---

[3] The single-integrated-enterprise test originally emerged in the Title VII context.  *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995) (applying the doctrine to Title VII discrimination claim).  "[C]ourts in this District have increasingly applied" the test to the FLSA context.  *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 133 (S.D.N.Y. 2020) (collecting cases); *see Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586-90 (S.D.N.Y. 2020) (applying the single-integrated-enterprise test to FLSA and NYLL claims); *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (applying the test to FLSA claim); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 557-59 (S.D.N.Y. 2015) (same); *Juarez*, 29 F. Supp. 3d at 367-68 (same).  However, the Second Circuit has not addressed whether the doctrine applies to a FLSA claim.  *See Sanchez*, 638 F. Supp. 3d at 373 n.8.

Whether the record could support a finding that Fantasy Cuisine and Dumpling Plus are a single integrated enterprise is a close call.  As previously stated, Dumpling Plus operates with its own managers, staff, kitchen, and equipment.  *See* Chu Decl. ¶¶ 8-9; Chu Dep. at 11:2-7.  However, Zhang testified that the workers in Fantasy Cuisine's dim sum department "supplied the stuff for both locations."  Zhang Dep. at 30:17-18.  While Plaintiffs never worked on the premises of Dumpling Plus itself, *id.* at 30:19-31:11; Wang Dep. at 39:15-18, Zhang stated in her affidavit that Chu and a waiter from Fantasy Cuisine picked up food that Plaintiffs had prepared each week and delivered it to Dumpling Plus, Zhang Aff. ¶ 24.  Zhang also attributes the increase in her weekly salary to the work that she was doing for both Fantasy Cuisine and Dumpling Plus.  Zhang Dep. at 24:7-13.  Furthermore, Plaintiffs presented similarities in the menus for Fantasy Cuisine and Dumpling Plus.  Opp. at 4; ECF Nos. 84-6, -7.  The evidence presented also suggests that Chu not only owns both Fantasy Cuisine and Dumpling Plus but also asserts active "control of labor relations" in his capacity as their ultimate manager.  *Griffin*, 835 F.3d at 292.  He hired the managers at both establishments, Chu Dep. at 11:2-7, 13:25-14:8; visits both establishments regularly, *id.* at 59:15-24; assigns tasks to individual employees, Zhang Aff. ¶ 23; and sets vacation policy and work schedules, Wang Dep. at 19:14-24; Zhang Dep. at 50:4-11.

Drawing all inferences in Plaintiffs' favor, as is required at the summary-judgment stage, the Court finds a genuine dispute of material fact as to whether Fantasy Cuisine and Dumpling Plus are so interrelated as to constitute a single statutory employer.  *See Huang*, 459 F. Supp. 3d at 589 ("The fact that a single manager transfers an employee from one location to another can add support to a claim that the two locations are not run independently but are interconnected."); *Flores*, 256 F. Supp. 3d at 442 ("In the FLSA context, facts that go to the existence of a single, integrated enterprise include common . . . menu and marketing; the use of the same employees at

multiple locations; the transfer of items between restaurants . . . ." (quoting *Khereed v. W. 12th St. Rest. Grp. LLC*, No. 15-cv-01363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016))); *Mooncake Foods*, 146 F. Supp. 3d at 559 (allegation that a defendant "would sometimes drive the sauces, marinade, freshly cut vegetables and meat to all the various locations" supported plaintiffs' allegation of a single integrated enterprise); *Bravo v. Established Burger One, LLC*, No. 12-cv-09044 (CM), 2013 WL 5549495, at *9 (S.D.N.Y. Oct. 8, 2013) (same for allegation that defendants "moved employees and food among the restaurants").  A jury could infer from the evidence presented that Dumpling House "had *some* control over the extent and terms of [Plaintiffs'] employment."  *Sanchez*, 638 F. Supp. 3d at 375.  Therefore, the Court denies summary judgment as to whether Dumpling Plus is an employer under the FLSA and the NYLL.[4]

## III.   Employee Exemptions to Overtime Claims

Subject to certain exceptions, FLSA requires employers to pay employees "at a rate not less than 1 ½ times [their] regular hourly wage" for the hours that they work "in excess of 40 hours per week." *Christensen v. Harris County*, 529 U.S. 576, 578-79 (2000) (citing 29 U.S.C. § 207(a)(1)).  The NYLL requires overtime pay that is consistent with the FLSA.  *See* 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 ("An employer shall pay an employee for overtime . . . in the manner and methods provided in and subject to the exemptions of [the FLSA].");  *Nakahata v.*

---

[4] The Court further concludes that, even if a reasonable jury could not find Dumpling Plus and Fantasy Cuisine to be a single integrated enterprise, it could find on the same facts that Dumpling Plus at least exercised functional control over Plaintiffs as their joint employer for FLSA and NYLL purposes.  Zhang's testimony that she prepared food that Chu delivered regularly to Dumpling Plus could establish, for example, that Chu "had a business that could or did shift as a unit from one putative joint employer to another," show that Plaintiffs "performed a discrete line-job that was integral to [Dumpling Plus's] process of production," and satisfy other factors under *Zheng*, 355 F.3d at 72.  The Court cannot hold as a matter of law that Dumpling Plus exercised no formal or functional control over Plaintiffs, even where Plaintiffs worked only on the premises of Fantasy Cuisine.

*N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (describing the NYLL as "incorporating" the FLSA definition of overtime).

FLSA contains several exceptions to its general overtime provision under Section 207. *See* 29 U.S.C. § 213; *id.* § 207(b), (f)-(q) (providing alternate overtime rules for certain professions). Although FLSA's exemptions were once narrowly construed, the Supreme Court has since made clear that "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement," and courts "have no license to give the exemption anything but a fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *accord Vasto v. Credico (USA) LLC*, 767 F. App'x 54, 56 (2d Cir. 2019) (summary order).

Whether the exemption applies to Plaintiffs presents a mixed question of law and fact. *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012). "The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is question of law." *Id.* (alterations in original) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). Defendants bear the burden of proving that such exemptions apply. *See id.*; *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 451 (S.D.N.Y. 2022).

Two exceptions are implicated here. First, Defendants argue that Zhang is exempt from the applicable overtime-pay requirements because she worked in a "bona fide executive . . . capacity." Br. at 11; *see* 29 U.S.C. § 213(a)(1). Second, they contend that Wang is exempt from the same requirements as a "creative professional." Br. at 13.

### A. Yan Qiu Zhang

FLSA's overtime-pay rule does not apply to employees who work in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). FLSA does not define the term "bona fide executive," instead directing the Secretary of Labor to do so by

regulation.  *See id.*  The Department of Labor (the "DOL") has defined an "employee employed

in a bona fide executive capacity" as an employee:

> (1) Compensated on a salary basis . . . at a rate of not less than
> $684 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise in which
> the employee is employed or of a customarily recognized
> department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more
> other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose
> suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other
> employees are given particular weight.

29 C.F.R. § 541.100(a).  "Consideration of these factors is a highly fact-intensive inquiry, to be

made on a case-by-case basis in light of the totality of the circumstances."  *Martinez v. Hilton*

*Hotels Corp.*, 930 F. Supp. 2d 508, 523 (S.D.N.Y. 2013) (citation omitted).  Under these

regulations, an employee's exempt status does not turn on his job title but instead "on whether

the employee was paid on a salary (as opposed to an hourly) basis and whether the employee's

duties met certain standards."  *Giallanzo*, 630 F. Supp. 3d at 452 (collecting cases); *see* 29

C.F.R. § 541.2.  "Summary judgment is appropriate on an executive exemption claim when all

four . . . requirements are satisfied."  *Giallanzo*, 630 F. Supp. 3d at 452 (quotation marks and

citation omitted).

  A material dispute of fact exists as to at least one of the exemption's four required

elements.  In particular, the parties dispute whether Zhang's "primary duty" was the

"management" of the dim sum department at Fantasy Cuisine.  29 C.F.R. § 541.100(a)(2).  An

employee's "primary duty" is the "principal, main, major or most important duty that the

employee performs."  29 C.F.R. § 541.700(a).  It must be assessed based on all of the facts "with

the major emphasis on the character of the employee's job as a whole." *Id.* Relevant factors to determining Zhang's "primary duty" include the "relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* Meanwhile, activities that constitute "management" include:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, . . . to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102. In her deposition, Zhang described her work primarily as a chef, not as a manager. *See* Zhang Dep. at 35:6 ("Three of us were making steamed buns."). Most, if not all, of her work was devoted to cooking and preparing food. *See id.* at 24:21-23 (describing her work as a "huge amount"); *id.* at 40:9-41:6 (describing her typical daily tasks as including cooking and food preparation). In her words, Zhang was not managing the department but "working together" with the other employees "making steamed buns." *Id.* at 35:7-8. The Court also credits Zhang's testimony that when Fantasy Cuisine's head chef asked the dim sum department what supplies were needed for the week ahead, he asked the entire group – not just Zhang. *Id.* at 45:12-46:14. This testimony is sufficient to create a dispute of material fact around Zhang's "primary duty" that a jury will need to resolve at trial. *See, e.g.*, *Solis v. SCA*

*Rest. Corp.*, 938 F. Supp. 2d 380, 397 (E.D.N.Y. 2013) (concluding after a bench trial that management was not the "primary duty" of a restaurant chef in part because "he spent the vast majority of his day cooking food"); *Noble v. 93 Univ. Place Corp.*, 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003) (denying summary judgment because of factual dispute as to whether employee was head chef and kitchen manager with primarily managerial responsibilities or "simply a chef who spent 75 to 100 percent of his time cooking"). Therefore, the Court denies summary judgment on whether Zhang worked for Defendants in a "bona fide executive" capacity.

### B. Bin Wang

The DOL identifies several types of professions that fall within the exemption for workers "employed in a bona fide . . . professional capacity," 29 U.S.C. § 213(a)(1), including "creative professionals," 29 C.F.R. § 541.302. To qualify as a "creative professional," "an employee's primary duty must be the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor," *id.* § 541.302(a), as opposed to "work that primarily depends on intelligence, diligence and accuracy," *id.* § 541.302(c). "[T]he binding regulations make clear that . . . title . . . is [not] dispositive of the exemption determination – what matters is what this particular employee's primary duties *actually were.*" *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 538 (S.D.N.Y. 2012). "The duties of employees vary widely," such that "[d]etermination of exempt creative professional status . . . must be made on a case-by-case basis." 29 C.F.R. § 541.302(c).

According to a DOL interpretation accompanying its 2004 amendments to regulations governing the overtime exemptions, the "creative professional exemption" can apply to chefs in certain circumstances. *Defining and Delimiting the Exemptions*, 69 Fed. Reg. 22122, 22154 (Apr. 23, 2004). In that regard, the DOL concluded:

> to the extent a chef has a primary duty of work requiring invention,
> imagination, originality or talent, such as that involved in regularly
> creating or designing unique dishes and menu items, such chef
> may be considered an exempt creative professional. . . . However,
> there is a wide variation in duties of chefs, and the creative
> professional exemption must be applied on a case-by-case basis
> with particular focus on the creative duties and abilities of the
> particular chef at issue.  The Department intends that the creative
> professional exemption extend only to truly "original" chefs, such
> as those who work at five-star or gourmet establishments, whose
> primary duty requires "invention, imagination, originality, or
> talent."

*Id.*[5]  The Court finds that material disputes of fact preclude it from finding that Wang is a

"creative professional" exempt from the FLSA and NYLL overtime requirements.  For example,

the parties dispute how much skill is involved in the preparation of dim sum cuisine.  Although

Wang considered himself a specialist "in the art of making dim sum," Wang Dep. at 23:20-21, he

said that mastering the cuisine "only takes one month," *id.* at 24:8-11.  As Wang put it, dim sum

cuisine is neither time consuming nor difficult to learn.  *Id.* at 24:1-11.  Nothing in the testimony

of those deposed suggests that the food made by Wang required "invention, imagination,

originality, or talent."  69 Fed. Reg. at 22154.  Plaintiffs also raise an issue of fact as to whether

Fantasy Cuisine is a "gourmet establishment."  *Id.*  While Defendants describe it as such, but do

not offer evidence to prove that status as a matter of law.  Fantasy Cuisine's inclusion on a list of

---

[5] "While 'the Department of Labor's interpretations of its own regulations are not binding and do not have the force of law, . . . we will generally defer to an agency's interpretation of its own regulations so long as the interpretation is not plainly erroneous or inconsistent with the law.'" *Pippins v. KPMG, LLP*, 759 F.3d 235, 242 (2d Cir. 2014) (ellipsis in original) (quoting *Ramos*, 687 F.3d at 559).  Here, neither party argues that the DOL's interpretation of the "creative professional exemption" as it relates to chefs is either erroneous or inconsistent with the law.  Nor has the Court identified any legal authority disagreeing with the DOL's interpretation of Section 541.302 as it relates to chefs.  Thus, the Court defers to the DOL's interpretation and finds a chef can be a "creative professional" exempt from the FLSA overtime requirements under the circumstances identified by the DOL – namely, if the Court finds that "the chef has a primary duty of work requiring invention, imagination, originality or talent, such as that involved in regularly creating or designing unique dishes and menu items."  69 Fed. Reg. at 22154.

roughly 60 restaurants featured in an article titled "Best of Westchester 2015 Eat & Drink," ECF No. 84-5, which does not describe Fantasy Cuisine as gourmet, is insufficient.  Further cutting against the degree of creativity involved at Fantasy Cuisine is its menu's resemblance to that of Dumpling Plus, *see* ECF No. 84-7, which Defendants do not describe as a gourmet establishment.

Without making credibility determinations that are inappropriate at this summary-judgment stage of the litigation, the Court cannot conclude that Wang's "primary duty" was "creating or designing unique dishes and menu items," nor can it conclude that Fantasy Cuisine was a "gourmet" restaurant.  69 Fed. Reg. at 22154.  Thus, the Court declines to grant summary judgment in favor of Defendants as to Wang and the "creative professional" exemption.

## CONCLUSION

For the reasons stated above, Plaintiffs' summary judgment motion is GRANTED in part and DENIED in part.  Jane Chen is DISMISSED as a defendant from this action.

This case will now proceed to trial on all outstanding issues.  These include (1) whether Dumpling Plus is liable as an employer of Plaintiffs; (2) whether Zhang was exempt from the FLSA and the NYLL under the "bona fide executive" exemption; and (3) whether Wang was exempt from the FLSA and the NYLL under the "creative professional" exemption.

The Court directs the parties promptly to confer, and, within three weeks of this decision, to submit a joint pretrial order consistent with the Court's Individual Rules governing jury trials.

Any motions *in limine* are due on the same date as the joint pretrial order; opposition briefs are due one week later.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 80.

Dated: January 29, 2024
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge